Good morning, Your Honours. If it pleases the Court, I'm Ken Absalom, appearing for Operating Engineers Local Union No. 3. And this case obviously has to do with an appeal from the District Court's ruling on denying defendants' requests for attorney fees. Contrary to the District Court's ruling, I submit that this is one of those rare cases in which an award of attorney fees for the prevailing defendant in a Title VII case is warranted. Indeed, on the facts of this case, it's truly compelled. The District Court erred in essentially holding that merely because the plaintiff was able to allege a prima facie case of disparate treatment at the pleading stage, that is, after several motions to dismiss and the second amended complaint, that because he alleged at that stage a prima facie case of disparate treatment, that he therefore had an arguable basis in fact and law for that claim, and thus he could not be held to be frivolous or unfounded or unreasonable, as the defense had argued. The problem with that approach is that in reaching that conclusion, relying purely on the pleading stage, the court simply ignored the facts that had been adduced during the course of discovery that established that indeed the plaintiff himself knew that that disparate treatment claim had a legitimate non-discriminatory basis from the inception of the case. So there was some evidence in the record that the facts in the complaint didn't bear any relationship to the facts as he knew them before the complaint. But what case, what's your best case to say that in that situation the sanctions are appropriate? Well, in this situation, I think the case that I'd like the court to really consider is a District Court case out of the Northern District of California called Moussa v. Dolan Foster Enterprises. That's a case where Judge Patel did the same kind of analysis that I'm suggesting here, namely looked at what the initial complaint stated, then determined how the discovery came out and it established that the testimony from the deposition of the plaintiff himself in that case, as in ours, was directly inconsistent with the alleged prima facie, the basis for the prima facie case in the complaint. Counsel, would you give us that case again? Has this been cited in any of the briefs? Yes, Your Honor. It was cited in our opening brief, I believe. It's Moussa, M-O-S-S-A v. Dolan Foster Enterprises. I've got Alexis' citation. That's fine. That's fine. It is in the brief. Are there any circuit cases in our circuit or other circuits that stand for that proposition, that there's no foundation in fact as determined after the complaint was filed? Well, there's the Harris case that did talk about the standard for determining whether a case is unfounded or frivolous from the outset. And there's also, of course, a more recent Supreme Court case that lays out that standard, Fox v. Vice. And my point here, Your Honor, is that it's easy enough to make out a prima facie case in the pleading stage. The question is, is there sufficient basis from the plaintiff's standpoint, even at the inception of the case, that there will be evidence to support that? And in our case, the evidence was clear from his own deposition. I'm not so sure that's true. I'd like to focus on that if I could. What in his deposition indicated that he knew that Jim Sullivan hadn't been treated differently? Well, he knew, he testified in his deposition, I believe it would be at the excerpts of records, pages 188 through 191 and forward. That's the key extract here. He testified there that he knew that there was a meeting with the chief executive officer, who's the business manager, Russ Burns, in which the question of two individuals, himself and the Caucasian, Mr. Sullivan, was raised as to how they would be reimbursed for expenses incurred when they traveled to the headquarters in Northern California. In Mr. Sullivan's case, he came in from Utah. In Mr. Mahoy's case, obviously, he came in from Hawaii. And there was discussions that came about in which both of them were told the union can no longer reimburse you for those expenses, lodging, meal, and the like, when you have to come over to the headquarters area in order to discharge your duties as officer in charge. Then the meeting continued with Mr. Mahoy, in which Mr. Mahoy said, well, I don't want to be coming over here all of this time. I've had a recent granddaughter.  I don't want to be coming here to California like Mr. Sullivan and other officers in charge, they're called, are required to do so. Now, what about this so-called prearranged aspect? How does that fit? There's no evidence of prearranged. What there is evidence of is that the officers had been talking about how can we justify these kind of reimbursements of expenses. Then there was discussion about as long as Mr. Mahoy is not coming over here to California in order to do those duties that are essential for the officer in charge, then we're going to have to adjust his compensation. He testified that he thought it had been prearranged in the pages you pointed out. I'm sorry, Your Honor. I didn't hear that last point. In the pages that you just identified to us, he testified that he thought it was prearranged. Prearranged in the sense that if he was not going to be reimbursed and is not going to come out to the area to do those duties, then he is not essentially going to be performing the same duties. He testified that he thought it was prearranged, that he'd have to change jobs and get less money. The only discussion at that point would be the smaller amount of money, would it be $100,000 or $115,000, something like that. Whether the union agrees it was prearrangement, it wasn't their testimony by him that he thought it had been prearranged. He did testify that he thought there had been some kind of discussion and prearrangement of the change in his position. The question is, does that show the intent to discriminate or was that based upon a legitimate non-discriminatory reason? Well, no, no, no. You see, you're trying to litigate the case again. The question that we have is, what did he understand at the time? And in particular, at the time of filing the complaint, is it established that he knew that he had not been treated differently? I don't know if you're hearing an echo. I do. Sorry about that. I intended to reserve some time, Your Honor. That's why I was looking at the note. Well, but so far I haven't seen anything, and your brief certainly doesn't discuss this, anything that indicates that he knew that he had not been treated differently than Mr. Sullivan. Well, we focus, obviously, I respectfully disagree with the court's analysis. Well, I searched your briefs for Sullivan, and I sure didn't find much other than the factual description. So unless you can establish for my purposes that he knew that he had not been treated differently from Sullivan, then I don't check off the premise of your argument, which is that he knew when he filed the complaint that it wasn't true. I would direct the court then to the concise statement of facts that are cited at the excerpts of record at 166, and there are these statements of facts that were undisputed. Obviously, he abandoned that claim at summary judgment level, but undisputed in terms of the sequence of events involving Mr. Sullivan and Mr. Mahoy in this whole area. The final point I would make. But that's at the time that he abandoned his claim at summary judgment, and you're trying to argue that he knew from the beginning when he filed the complaint that he did not have a factual basis for a claim. And so telling me that he learned after discovery by the time of summary judgment that he didn't have a claim isn't the same thing. We infer from that testimony, and we obviously disagree with Your Honor on this, that from that testimony it was clear that he knew that the reason why that reduction in salary occurred was because of the change in job classification and position that he agreed upon. The final point I would just add. Which would have been the same arrangement with the other person from Utah. That's correct, Your Honor. And Mr. Mahoy also acknowledged that he knew that he could have continued in that higher paid position if he agreed to come to California and discharge the duties that were expected of him as the officer in charge. Instead, he agreed to this arrangement to become what's called a special representative to the business manager. The other point, I won't argue it much more because I would like to reserve a minute or two, if I may, Your Honor. You're down to 40 seconds. 40 seconds, and I better sit down and reserve that portion. Thank you. Okay, so as I understand the defendant's position on the appeal, they are taking the position that they should have been awarded attorney's fees only with regard to part of the case. With regard to the disparate impact related to this issue about whether or not Mr. Sullivan was treated differently than my client. And as the court pointed out in his deposition, he indicated that as far as he understood, I mean there were a series of things that they did between December of 2009 and the summer of 2010. Only one of which was this issue about him having his salary reduced. And as he testified on page 22 of our brief, he stated that his understanding was that it was a pre-decided determination that he was going to have his salary reduced. And how does that affect, even if that were the case, how does that affect his claim that Sullivan was similarly situated and was not required to relocate or have his salary reduced? I don't understand the relationship between his belief that there was prearrangement in offering him a lower salary if he changed his job description and the claim of discrimination. Because his position was in the complaint that Mr. Sullivan was treated differently than him. Right. Sullivan is Caucasian, he's Hawaiian. But how does that relate to his statement that there was prearrangement? Well, because they were arguing that he agreed to it, and therefore he should never have raised that as an issue about being treated differently. But he had somehow agreed to the reduction. He said in his deposition that he agreed to the reduction. And, in fact, he negotiated a higher amount. So how does that relate to how Mr. Sullivan was treated differently? Well, because his position was that with regard to Mr. Sullivan, who also did not want to transfer, his salary was not reduced. And yet, in his case, because he did not want to relocate, that they had already pre-decided that he would have his salary reduced. So was there evidence that Mr. Sullivan was offered or was required to take a different position, but his salary wasn't reduced, where he didn't have to visit the mainland? Well, after discovery in the case, it was determined that we didn't have a viable position to proceed on in summary judgment. That's why we agreed to not oppose the... But how does prearrangement relate to that? I just don't understand its significance in this context. Well, it's not just prearrangement. It's the fact that, at the outset, he understood Mr. Sullivan refused to relocate, but his salary was not reduced. There was no prearrangement to reduce his salary. There was no reduction at all. But with regard to Mr. Mahoy, the Hawaiian, they had already decided that his salary would be reduced, and then it was just a matter of him meeting with Mr. Burns to determine how much of a reduction there was going to be. That's not reflected in the deposition testimony. So I'm just wondering what that was based on. I mean, obviously it was in the complaint, but the deposition testimony doesn't reflect that. Well, at the outset, he knew that Mr. Sullivan did not have his salary reduced, and yet he did not agree to relocate, and that's different from Mr. Mahoy, who's the Hawaiian, not the Caucasian. Who agreed to take a different job. Okay. Who asked the questions of the deposition? The attorney for the defendant. Was Mr. Mahoy trying to make his own case at the deposition? To tell you the truth, Judge, I didn't attend the deposition. You're successor to counsel, so I'm not faulting however, but really it's not very common for a party to be questioned by his own attorney at a deposition, is it? So if he didn't talk about something, it's because the other counsel didn't ask him. That's correct. I would agree with that. So, again, with regard to the limited scope of their appeal, I don't have any further comments unless the court has some questions. Apparently not. Okay. Thank you. Just one point, given the 45 seconds that I did actually reserve your honors. The relocation is a misnomer. Neither of those two individuals were ever required or asked to relocate. What they were asked to do is to travel to California to discharge duties that they have to do as officer in charge. And Mr. Sullivan continued to do that as the deposition established and as the concise statement of facts established. He continued to travel to California. What happened to both of them that prompted all of this in part was the decision by the organization that they could no longer reimburse either one of them for the expenses incurred while traveling. That was applied across the board. And so then when Mr. Mahoy chose to accept the special representative position, he no longer had to come to California in order to do those. So it's not a question of relocation. It's a question of how much time you're going to spend in that northern California area conducting those tasks. So with that clarification, I'm happy to submit it. Thank you. The case of Mahoy v. Operating Engineers Local Union is submitted.
judges: O'scannlain, Clifton, Ikuta